Filed 6/11/26  P. v. Nowden CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084177, D084743 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD143117) |
| v. | |
| TERRANCE LAMONT NOWDEN, | |
| Defendant and Appellant. | |

CONSOLIDATED APPEALS from orders of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Robin Urbanski, Donald Ostertag, and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Terrance Lamont Nowden was convicted in 2000 of first degree murder with special circumstances arising from a home invasion he committed with

two other men. He now appeals from the trial court's orders denying his requests for resentencing under Penal Code[1] sections 1172.6 and 1172.1. We find no error in the court's orders and affirm.

BACKGROUND

I.

*Conviction Offenses and Trial Evidence*

In 2000, a jury convicted Nowden of first degree murder (§ 187, subd. (a)) under an aiding and abetting theory with the special circumstances that the murder was committed during an attempted robbery and burglary (§ 190.2, subd. (a)(17)(A) & (G)). The jury also convicted Nowden of residential burglary (§§ 459 & 460), two counts of attempted first degree robbery (§§ 664/211, 212.5, subd. (a), 213, subd. (b)), and assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)). He was sentenced to life in prison without the possibility of parole plus four years.

In 2001, we affirmed the judgment. (*People v. Nowden* (Dec. 31, 2001, D036964) [nonpub. opn.].) The following summary of the trial evidence underlying Nowden's convictions is taken from that opinion.[2]

_____

[1] Further unspecified statutory references are to the Penal Code. Nowden separately appealed from both orders in appeal numbers D084177 and D084743. We granted the People's unopposed motion to consolidate the two appeals under D084177.

[2] Both parties' statements of facts are taken from the record of the direct appeal in D036964, admitted as exhibits at the evidentiary hearing in the trial court. We granted Nowden's unopposed request for judicial notice of the record on appeal in case no. D036964. Accordingly, we deny his motion to augment the record with the same record from appeal no. D036964 as unnecessary.

2

"Jose and Isabel Sedano lived on Skyline Drive with their children, Delores, 10, and Eduardo, 5. On the evening of November 24, 1998, after the Sedano family had gone to bed, three or four African-American men broke into the house. Isabel was awakened by loud noises and dogs barking. While Jose remained asleep, Isabel got up and went to the window. Suddenly, the bedroom door was kicked open, which woke up Jose. Two men entered the bedroom, one brandishing a gun. A third man stood by the door. The man with the gun pointed it at Isabel and asked: 'Where is the clavo?' 'Clavo' is slang for drugs in Spanish; its literal translation is nails. Isabel said there were no drugs.

"The third man went to the room shared by Delores and Eduardo. Jose pleaded for the children to be left alone. The man with the gun hit Jose on the forehead with the gun, forcing him to the ground. The man with the gun also struck Isabel on the head and face with the butt of the gun. The other man in the master bedroom tied Isabel's hands behind her back and put black plumber's tape over her eyes and nose. She asked the intruders to uncover her nose and leave it open; one of them complied, but then taped her mouth. The intruders bound Jose's hands behind his back and wrapped tape around his head. Jose's nose and mouth were completely covered by several layers of tape.

"The intruder who went into Delores's bedroom asked her where the clavo was. Delores, thinking the man wanted nails, took him to the garage and handed him some nails. The man threw down the nails and took her back to the house. At one point, Delores needed to go to the bathroom. The man stood in the doorway of the bathroom with his back to Delores. At another point, Delores was choked and lost consciousness. She was also sprayed in her eyes and on her face with WD-40.

"The intruders ransacked the house. Before they left, one of the intruders covered Isabel's nose with tape and said to her: 'Hasta la vista, lady.' Isabel was able to breathe because she had moistened the tape over her mouth with her tongue and the tape had not stuck to her mouth.

"After the intruders left, Delores removed some of the tape from her mother's face and telephoned 911. When police arrived, Isabel was bleeding but alive. Jose was dead from asphyxia by smothering. Isabel suffered lacerations to the top of her head, the back of her head and under her chin. Doctors stapled the wound on the top of her head and sutured the other wounds. Isabel also had a black eye. While Delores was at the hospital, doctors noticed the bruises on her face turning more purple and blue, her head becoming more swollen and petechiae (small, dot-like hemorrhages) on her face. The emergency room doctor said petechiae are caused when a significant amount of force is applied to a person's neck. Delores was admitted to the hospital.

"The intruders sprayed WD-40 on surfaces throughout the house, apparently to destroy any fingerprints they left. However, crime scene investigators were able to lift numerous fingerprints. A latent print examiner identified a print on a disposable glove found on the floor in the garage and prints found on the doorway of Delores's bathroom as Nowden's fingerprints."

4

## II.

### *Proceedings on Petitions for Resentencing*

In January 2019, Nowden filed a petition for resentencing under former section 1170.95 (now section 1172.6),[3] asserting he could not now be convicted of first degree murder under recent changes to sections 188 and 189 because he was not the actual killer, did not have intent to kill, and was not a major participant in the felony or did not act with reckless indifference to human life. The trial court denied the petition, finding the jury's true findings on the special circumstances rendered him ineligible for resentencing as a matter of law. We reversed and remanded to the trial court for reconsideration after concluding its summary denial was improper. (*People v. Nowden* (Oct. 9, 2020, D075767) [nonpub. opn.].)[4]

The California Supreme Court then granted the People's petition for review and held the matter pending its decisions in *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*) and *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). After the matter was transferred back to this court following issuance of *Strong* and *Lewis*, we held the trial court erred by finding Nowden failed to meet his prima facie burden based solely on the special circumstances finding. We thus remanded the matter to the superior court for further proceedings pursuant to section 1172.6. (*People v. Nowden* (Jan. 3, 2023, D075767) [nonpub. opn.].)

---

3    Assembly Bill No. 200 (Stats. 2022, ch. 58, § 10) renumbered section 1170.95 to 1172.6, effective June 30, 2022.

4    On our own motion, we also take judicial notice of our files in appeal no. D075767. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

After extensive briefing and submission of exhibits by the parties, the trial court held an evidentiary hearing on Nowden's section 1172.6 petition in February 2024. The parties did not present any new evidence and instead relied on the record that was before this court on Nowden's direct appeal from his convictions. In March 2024, the court denied the petition. It determined the People had proven beyond a reasonable doubt that Nowden was guilty of felony murder as a major participant who acted with reckless indifference to human life.

Nowden subsequently invited the trial court to vacate his first degree murder conviction and resentence him on the lesser included offense of second degree murder pursuant to sections 1172.1 and 1385. In August 2024, the trial court declined Nowden's invitation to recall and resentence him, finding it was not in the interest of justice.

Nowden has appealed both orders denying his request for resentencing under sections 1172.6 and 1172.1. As mentioned, we granted the People's motion to consolidate both appeals.

DISCUSSION

I.

*No Error in Denial of the Section 1172.6 Petition*

Nowden contends the trial court erred in denying his section 1172.6 petition because there was no substantial evidence to support that he was a major participant in the underlying felony and acted with reckless indifference to human life. He also asserts the denial of his petition violates his right to due process. We reject both contentions and find no error.

A.     *Felony Murder and Resentencing Under Amended Law*

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which "significantly limited the scope of the

6

felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*Strong, supra*, 13 Cal.5th at pp. 707–708.)  The amended law "limits liability under a felony-murder theory principally to 'actual killer[s]' ([§] 189, subd. (e)(1)) and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' (*id.*, subd. (e)(2))." (*Strong,* at p. 708.)  "Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life.' " (*Ibid.*)

Our Supreme Court has identified factors that are to be considered in determining whether an individual was a major participant in a felony who acted with reckless indifference to human life.  The following nonexclusive factors are used to determine whether a defendant was a major participant in the felonies that resulted in death:  (1) the defendant's role in planning the criminal enterprise that led to one or more deaths; (2) the defendant's role in supplying or using lethal weapons; (3) the defendant's awareness of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants; (4) whether the defendant was present at the scene of the killing, in a position to facilitate or prevent the actual murder, or play a particular role in the death; and (5) the defendant's conduct after lethal force was used.  (*People v. Banks* (2015) 61 Cal.4th 788, 799–803 (*Banks*).)  The following nonexclusive factors are used to determine whether the defendant acted with reckless indifference: (1) the defendant's use of or awareness of the presence of a weapon or

7

weapons; (2) the defendant's physical presence at the scene and opportunity to restrain confederates or aid the victim; (3) the duration of the crime; (4) the defendant's knowledge of any threat the confederates might represent; and (5) the defendant's efforts to minimize the risks. (*People v. Clark* (2016) 63 Cal.4th 522, 618–623 (*Clark*).)

Senate Bill 1437 also created a procedural mechanism for those convicted under the former law to seek relief following the amendments. (*Strong, supra*, 13 Cal.5th at p. 708; former § 1170.95, now § 1172.6.) Such defendants may file a petition declaring "that '[t]he petitioner could not presently be convicted of murder . . . because of [the] changes to . . . [s]ection 188 or 189.' " (*Strong,* at p. 708.) If the trial court determines the petition establishes a prima facie case for relief, it issues an order to show cause and the matter proceeds to an evidentiary hearing at which the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder under the law as amended by Senate Bill 1437. (§ 1172.6, subds. (c), (d)(3); *Strong,* at pp. 708, 709.) If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, must be vacated and the petitioner must be resentenced on the remaining charges. (§ 1172.6, subd. (d)(3).)

B.     *Trial Court's Ruling After Evidentiary Hearing*

In denying Nowden's section 1172.6 petition, the trial court applied the factors identified in *Banks* and *Clark* and incorporated in CALCRIM 540B.

First, the court found the *Banks* factors weighed in favor of finding Nowden was a major participant in the burglary and attempted robbery at the Sedano home. The court explained the first two factors (planning of the crime and supply and use of a weapon) were neutral because there was no relevant evidence as to these factors. As to the third factor (knowledge of the

dangers posed by the crime, the weapons used, and the past conduct of the participants), the court found Nowden intended to commit the crimes with the goal of stealing drugs by force or fear, he expected deadly force to be used, and he knew a gun was present. As to the fourth factor (facilitation of or ability to prevent the death), the court found that despite Nowden's knowledge of the violent encounter he did not leave and did not allow Delores to escape or intervene in the assault of her parents, actions that might have prompted the other men to flee. Neither did Nowden anonymously call for help nor encourage the other men to stop the crimes and leave the home. As to the last and fifth factor (the assailant's actions after the death), the court highlighted the facts that Nowden made no effort to check on the victims and showed no remorse or concern for them.

The court then turned to the *Clark* factors to determine whether Nowden acted with reckless indifference to human life. As to the first *Clark* factor (use of a weapon or awareness that a weapon was present), the court found Nowden knew a gun and tape were being brought to commit the crime. The court also found the second factor (physical presence at the scene and opportunity to restrain confederates or aid the victim) weighed against Nowden. It explained Nowden either saw Jose taped and bloody or "purposely avoided looking in to see their condition but simply continued to participate in the crimes." As to the third factor (duration of the crime), the court found the crimes did not occur quickly but, instead, lasted some 20 minutes, enough time to create a great risk of harm. As to the fourth factor (knowledge of any threat the other assailants represented), the court found Nowden knew a gun and tape were being brought to commit the crime, he and the other men were prepared to engage in a violent home invasion, and, while the men assaulted Jose and Isabel, Nowden "knew their plight." Last,

9

the trial court found the fifth factor (efforts to minimize the risks) weighed against Nowden because he facilitated the crimes, guarded the bathroom door with Delores inside so she could not escape or aid her parents, and failed to intervene in the killing or call for help.

Based on the evidence, the trial court found that Nowden would still be guilty beyond a reasonable doubt of first degree murder under current felony murder law because he was a major participant who acted with reckless indifference to human life.

C.     *Analysis*

We review a challenge to the trial court's denial of resentencing under section 1172.6 for substantial evidence. (*People v. Emanuel* (2025) 17 Cal.5th 867, 885 (*Emanuel*).) Under this standard, we "examine the record independently for substantial evidence—that is, evidence which is reasonable, credible, and of solid value that would support a finding beyond a reasonable doubt." (*Banks, supra*, 61 Cal.4th at p. 804 [cleaned up].) "We review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence. Conflicts and even testimony that is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*) [cleaned up].) We do not reweigh the evidence or reevaluate a witness's credibility; we look for substantial evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 (*Lindberg*); *People v. Manibusan* (2013) 58 Cal.4th 40, 87.) "The same standard governs in cases where the

prosecution relies primarily on circumstantial evidence."[5] (*Zamudio,* at p. 357; *Clark, supra*, 63 Cal.4th at p. 610.) We will affirm the order unless "upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

      1.    *Major Participant*

Nowden groups the major participant factors together and challenges the sufficiency of the evidence supporting these factors. Doing so, he argues the fingerprint evidence is the only evidence that he took any part in the crimes, and the trial court's inferences from this evidence was the result of improper speculation. He is mistaken. The record and all reasonable inferences from the circumstantial evidence support the trial court's determination that Nowden was a major participant in the crimes. (*People v. Grant* (2020) 57 Cal.App.5th 323, 330 [" 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' "].)

Because the trial court found the first two *Banks* major participant factors to be neutral, we only consider Nowden's claims that the evidence is insufficient to support adverse findings on the third through fifth factors, i.e. Nowden's awareness of the particular dangers posed by the nature of the crime, the weapons used, or past conduct of the other participants; whether he was present at the scene of the killing, in a position to facilitate or prevent

---

[5]    Nowden acknowledges the courts of appeal have applied the substantial evidence standard to the review of a trial court order denying a section 1172.6 petition but, because the California Supreme Court has not designated the applicable standard in such cases, he invites us to reconsider the issue. We decline to do so but note that, for the reasons we shall explain, the result here would be the same even if we were to apply de novo review.

the actual murder, or played a particular role in the death; and his conduct after lethal force was used.

The evidence supports the trial court's finding that Nowden knew of the dangers posed by the crimes, even if there is no evidence he had specific knowledge that weapons were to be used before the crimes began. Specifically, the men broke through the door of an occupied home to rob individuals they mistakenly believed were drug dealers of their contraband. Thus, Nowden and the others must have expected a brazen confrontation with criminals who would have a motive to protect themselves and the purported drugs that formed their livelihood. And as the crimes unfolded, Nowden became aware the other men violently confronted Jose and Isabel in their room. (See *People v. Montanez* (2023) 91 Cal.App.5th 245, 272–274 (*Montanez*) [evidence supported third *Banks* factor where, among other evidence, "[t]he warning signs that the crimes posed a serious risk of danger to the victims accumulated as the crimes unfolded over the course of the approximately 23 minutes"].)

As to Nowden's physical presence at the scene and his opportunity to restrain the other men or aid Jose, Nowden suggests there were four assailants, and he was the unidentified fourth man who was not near the bedroom where the others assaulted Jose and Isabel. But the evidence supports a contrary finding. Although Delores told the 911 operator after the crimes that there were three or four men, she testified at trial there were just three men and the weight of the evidence supports her trial testimony. And, if Nowden did not enter the bedroom where the other two men murdered Jose, this means he was the man who stood outside the bedroom door. In addition, there is no doubt he was the man who guarded the bathroom door while Delores was inside, as his fingerprints were recovered from the area of

12

the door. From these locations inside the home, Nowden would have heard the other men confronting Jose and Isabel and Isabel's screams for help, which Delores heard clearly from her bedroom down the hall. Rather than entering the room to stop the assault or assist the victims, Nowden facilitated the murder by ensuring Delores was unable to intervene on her parents' behalf, or escape to seek help when she came out of her room to use the bathroom. (See *People v. Nieber* (2022) 82 Cal.App.5th 458, 476–477 (*Nieber*) [evidence supported fourth *Banks* factor where, at a minimum, defendant was present when home invasion committed and assisted in the crimes of burglary and robbery, he was present when violence was used against victims, and DNA tied him to the scene].)

Last, the evidence regarding Nowden's conduct after the murder supports the trial court's finding that he was a major participant. He did not check on Jose and Isabel or call for help upon his retreat from the home. (See *Montanez, supra*, 91 Cal.App.5th at p. 280 [fifth *Banks* factor weighed against defendant where he was close enough to victim to have reason to know he was in mortal danger but did not turn back to check on him]; see also *Nieber, supra*, 82 Cal.App.5th at p. 477 [evidence supported fifth *Banks* factor where, "[n]ot only did [the defendant] not render aid to the murder victim, but he also left behind [victims], still bound with their faces covered"].)

### 2. *Reckless Indifference to Human Life*

Nowden also challenges the sufficiency of the evidence that he acted with reckless indifference to human life, by largely analogizing his case to others where the felony murder finding was vacated, minimizing the evidence against him, and dismissing the trial court's findings as speculation. To the extent he makes a proper challenge to the *Clark* factors, he relies on a

conclusory general assertion that "no evidence" supported them. We therefore reject any challenge as undeveloped. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) Nevertheless, for the same reasons we find the evidence sufficient to support the court's findings on the *Banks* major participant factors, we also find the evidence supports the court's findings as to each of the *Clark* factors.

As to the first *Clark* factor, it is reasonable to infer from the record that Nowden knew of the gun, plastic handcuffs, and/or tape the men carried with them to commit the crimes. Although the "mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life" (*Clark, supra*, 63 Cal.4th at p. 618), the combination of crime tools carried by the assailants into a home where they intended to commit a home invasion supports a finding that Nowden knew violence was to be used against the victims. As to the second factor, Nowden was close enough to the bedroom where Jose was assaulted so that he either saw him taped and bloody or, as the trial court explained, "purposely avoided looking in to see their condition." From such proximity, he could have attempted to stop the other men from assaulting Jose or rendered aid. (See *Clark,* at p. 619 [failure to act as a restraining influence supports a finding of greater fault for the resulting death].) As to the *Clark* factor related to duration of the crime, the invasion of the Sedano home lasted some 20 minutes, long enough to "increase the risk of resistance, conflict, and violence." (*Emanuel, supra*, 17 Cal.5th at p. 886.) And, as to the fourth and fifth *Clark* factors, the evidence shows that, even if Nowden did not know when he entered the home that the other men posed a threat to the victims, he heard the violent confrontation with Jose and Isabel, as well as Isabel's resulting calls for help. By this point, he knew his cohort's were likely to kill

14

but did nothing to minimize the risks.  (See *Clark,* at p. 621 [knowledge of an accomplice's propensity to kill may arise *during* the felony].)

Nowden also contends the denial of his section 1172.6 petition was erroneous because the trial court failed to consider his youth at the time of the crimes as a factor in its reckless indifference analysis.  However, the record shows the court did, in fact, consider this factor.

Since at least 2021, courts have recognized that a defendant's youth at the time of the felony victim's death is relevant to the reckless indifference analysis.  (See *Emanuel, supra*, 17 Cal.5th at p. 885, fn. 6; *People v. Harris* (2021) 60 Cal.App.5th 939, 960 (*Harris*); *In re Moore* (2021) 68 Cal.App.5th 434, 453 (*Moore*) ["It is well recognized that children generally are less mature and responsible than adults and often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them.  As a result, the law has historically reflected the same assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them." (cleaned up.)].)  In light of the recognition that a defendant's youth is a relevant factor in determining whether he or she formed the requisite reckless indifference, California's model jury instruction on first degree felony murder enumerates the defendant's age as one of the factors a trier of fact should consider when making a determination on the element of reckless indifference.  (CALCRIM No. 540B.)

After *Harris* and *Moore,* courts of appeal have held it to be error where a trial court has failed to consider the defendant's youth before denying resentencing under former section 1170.95, but only where the denial was made before or soon after *Harris* and *Moore* provided guidance on the relevance of the defendant's youth and defense counsel did not highlight the

15

issue for the court. (See *People v. Jones* (2022) 86 Cal.App.5th 1076, 1091–1093 (*Jones*); *People v. Oliver* (2023) 90 Cal.App.5th 466, 488 (*Oliver*).) We do not have those circumstances here. In this case, the trial court issued its denial order in March 2024, years after *Moore* and *Harris* were decided. Further still, defense counsel argued that Nowden's youth negated his ability to form the requisite reckless disregard for human life in the trial court. Crucially, the trial court expressly stated it was applying the factors enumerated in CALCRIM No. 540B, which include consideration of the defendant's age. Under these circumstances, we have no reason to deviate from the normal presumption that the trial court followed the law and "duly considered the evidence." (*Jones, supra*, 86 Cal.App.5th at p. 1092.)

### 3. *Due Process and Youth Factor*

Last, Nowden argues the trial court's denial of his section 1172.6 petition violated due process because it was not supported by substantial evidence. Because we conclude substantial evidence supports the court's order, Nowden's due process argument necessarily fails.

## II.

### *No Error in Denying Resentencing Under Section 1172.1*

### A. *Trial Court's Ruling*

Upon denying Nowden's section 1172.6 petition, the trial court set a new hearing to consider whether section 1385 permitted it to strike the special circumstance allegations. In response, Nowden invited the court to vacate his conviction for first degree murder and resentence him on the lesser included offense of second degree murder under section 1172.1, effectively disposing of the special circumstance allegations. At the hearing on the

16

section 1172.1 petition, the court and the parties agreed Nowden had filed the motion at the invitation of the court.[6]

The trial court denied Nowden's section 1172.1 petition. The court found it could not modify Nowden's sentence by reducing his term of imprisonment under section 1172.1, subdivisions (a)(1) and (a)(3)(A), because the motion was made more than 120 days after his commitment and none of the applicable sentencing laws had been changed. It then considered whether to vacate Nowden's first degree murder conviction and resentence him on a charge of second degree murder pursuant to section 1172.1, subdivision (a)(3)(B) and found such relief was not in the interest of justice. In doing so, the court stated that it "weigh[ed] all the factors" and expressly discussed in its written order Nowden's traumatic childhood, the role his childhood played in developing "who [he] was at the time of the murder," his transformation while in prison, the "horrendous" facts of the underlying offense, and the vulnerability of the victim.

---

[6] The People argue Nowden's appeal should be dismissed to the extent he challenges the trial court's ruling on resentencing under section 1172.1. The People contend the trial court's ruling does not amount to an appealable order because it was issued in response to Nowden's own request for relief under section 1172.1, which is not permitted under the statute and, thus, the trial court was under no obligation to address Nowden's motion at all. (See *People v. Brinson* (2025) 112 Cal.App.5th 1040, 1049 [defendant requesting relief under section 1172.1 "does not have a substantial right at stake, and the trial court's decision on that request is not appealable"].) But as both the trial court and the People acknowledged, the court had invited the section 1172.1 motion. For this reason, we decline to dismiss this claim and instead resolve it on the merits.

B.     *Relevant Legal Principles*

"Section 1172.1 provides authority for a trial court to recall the sentences of incarcerated defendants and resentence them under certain circumstances.  It is a statutory exception to the general rule that once a judgment is rendered and execution of the sentence has begun, the trial court does not have jurisdiction to vacate or modify the sentence."  (*People v. Wilson* (2025) 109 Cal.App.5th 198, 201 [cleaned up].)  Relevant here, a trial court "may, on its own motion, within 120 days of the date of commitment or at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced."  (§ 1172.1, subd. (a)(1).)  In doing so, the court may, in the interest of justice, "[v]acate the defendant's conviction and impose judgment on any necessarily included lesser offense or lesser related offense, whether or not that offense was charged in the original pleading, with the concurrence of the defendant, and then resentence the defendant to a reduced term of imprisonment."  (*Id.*, subd. (a)(3)(B).)

The resentencing court must "apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  (§ 1172.1, subd. (a)(2).)  It must also "consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so

18

that continued incarceration is no longer in the interest of justice." (*Id.,* subd. (a)(5).) In addition, the court shall consider evidence "the defendant has experienced psychological, physical, or childhood trauma, . . . or if the defendant is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense, and whether those circumstances were a contributing factor in the commission of the offense." (*Ibid.*)

We review a trial court's decision whether to recall and resentence a defendant on its own motion pursuant to section 1172.1, subdivision (a) for abuse of discretion. (*People v. Craig* (2026) 117 Cal.App.5th 1165, 1175; *People v. Olea* (2025) 115 Cal.App.5th 889, 902–903 (*Olea*).) "To establish an abuse of discretion, a defendant must establish the court 'act[ed] while unaware of the scope of its discretion" [citation], "considered impermissible factors" [citation], or made a choice "so irrational or arbitrary that no reasonable person could agree with it" [citation]." (*Olea,* at pp. 902–903.)

C.    *Analysis*

Nowden challenges the factual support for the trial court's order denying relief under section 1172.1. Specifically, he argues the evidence, which was comprised only of his fingerprints found near the bathroom, did not support the trial court's finding as to how large a role he played in the crimes. But, as we explained with respect to Nowden's section 1172.6 petition, the trial court relied on both the fingerprint evidence, trial testimony, and reasonable inferences flowing from this evidence to determine the extent to which he participated in the crimes. And, as we found this evidence sufficient to support the trial court's finding that Nowden was a major participant in the crimes, we also find it sufficient to support the court's finding that the facts of the crimes committed here, and Nowden's role

19

in committing them, weighed against eligibility for resentencing under section 1172.1.

Contrary to Nowden's argument, the trial court did not fail to consider any of the applicable factors, including whether his current age and the amount of time served diminished his risk of future violence, or his youth at the time of the offense. Although the court did not elaborate on each of the applicable factors, it stated it "weigh[ed] all the factors," and it fairly addressed the factors Nowden highlights, albeit not with great elaboration. Specifically, the court considered Nowden's "time in prison," during which, the court noted, he "had an amazing transformation into a very productive responsible inmate." The court could not have undertaken an analysis of this factor without considering the age Nowden had attained while in prison and the amount of time he had served. In addition, the court stated it considered how Nowden's traumatic childhood "played a part in the development of *who [he] was at the time of the murder*," (italics added) a consideration that necessarily would have included his youth and immaturity.

We further note that the record supports the trial court's weighing of the relevant factors here. As the court recognized, Nowden has made commendable gains and has aged and matured during his many years of incarceration. In addition, he experienced a traumatic childhood, which would have influenced how he behaved when he committed these crimes in his youth. Nevertheless, the trial court's conclusion that these factors do not outweigh Nowden's significant role in facilitating these egregious crimes and his failure to act to prevent Jose's death despite being in a position to do so, was not so irrational or arbitrary as to amount to an abuse of discretion.[7]

---

[7] Because we affirm the court's denial of relief under section 1172.1, we

20

Because we find the trial court properly exercised its discretion when it denied Nowden resentencing under section 1172.1, we further reject his argument that the trial court violated his federal due process rights by failing to properly exercise its discretion.

## III.

*Nowden's Section 3051 Argument Is Not Properly Before Us in this Appeal*

Under section 3051, "most persons incarcerated for a crime committed between ages 18 and 25 are entitled to a parole hearing during the 15th, 20th, or 25th year of their incarceration." (*People v. Hardin* (2024) 15 Cal.5th 834, 838 (*Hardin*).) But "[t]he statute excludes . . . offenders who are serving sentences of life in prison without the possibility of parole for a crime committed after the age of 18." (*Id.* at pp. 838–839.) In *Hardin*, the California Supreme Court found section 3051 did not violate equal protection on its face by excluding offenders with a life without parole sentence for murder with special circumstances while providing youth offender parole hearings to other murderers who received an indeterminate life sentence. (*Id.* at pp. 858–864.) Nevertheless, the court left open the possibility that offenders might be able to bring as-applied equal protection challenges to section 3051. (*Id.* at pp. 839, 862, 864.)

After Nowden's resentencing hearing in the trial court, the First Appellate District considered just the type of as-applied equal protection challenge contemplated by *Hardin*. In *People v. Briscoe* (2024) 105 Cal.App.5th 479 (*Briscoe*), the court found section 3051 violated equal protection as applied to exclude from parole consideration a youth offender

do not address the parties' arguments about whether section 1385 impacted the trial court's authority to vacate Nowden's first degree murder conviction under section 1172.1.

21

"sentenced for special circumstance murder under section 190.2, subdivision (d)—which applies to nonkiller participants in specified felony offenses during which a murder occurred—while including those convicted of nonspecial circumstance first degree felony murder for the same specified felony offenses per the exact same standard under section 189, subdivision (e)(3)." (*Briscoe,* at pp. 485, 490–494.)

Relying on *Briscoe*, Nowden argues he should be entitled to a youth offender parole hearing under section 3051, and the provision of that statute rendering him ineligible for such a hearing due to his life without parole sentence violates equal protection as applied to him. But Nowden never requested a youth offender parole hearing under section 3051 in the trial court. Nor did he argue to the trial court during the proceedings on his resentencing matters that he should be eligible for a youth offender parole hearing. Nowden relies on his arguments in the trial court that section 190.2's mandatory life without parole sentence violates equal protection. But this equal protection argument had nothing to do with a youth offender parole hearing under section 3051.

Because Nowden never raised the issue of a youth offender parole hearing in the trial court, there is no trial court order on the issue. And absent an appealable order, we have no jurisdiction to review the issue on appeal. (*People v. Vaesau* (2023) 94 Cal.App.5th 132, 143 ["Absent an appealable order, an appellate court lacks jurisdiction to consider an appeal."].) Even if we could conclude the trial court's orders on the resentencing petitions were sufficient to support Nowden's appeal on the issue of a youth offender parole hearing, his equal protection argument here would be forfeited because he did not raise it in the trial court. (See *People v. Fruits* (2016) 247 Cal.App.4th 188, 208 ["a party cannot argue on appeal that

22

the trial court erred in failing to conduct an analysis it was not asked to conduct"]; *People v. Fuiava* (2012) 53 Cal.4th 622, 655, ["A defendant ordinarily cannot obtain appellate relief based upon grounds that the trial court might have addressed had the defendant availed him or herself of the opportunity to bring them to that court's attention"].)[8]

## DISPOSITION

The orders are affirmed.

---

[8] We recognize Nowden could not have raised an argument directly premised on the analysis in *Briscoe* during his resentencing proceedings in the trial court because *Briscoe* was decided after the court denied his resentencing petitions. Nevertheless, *Hardin* was decided before Nowden's resentencing proceedings and left open the possibility for an as-applied equal protection challenge. In fact, Nowden's counsel acknowledged *Hardin* in his briefing in the trial court and appeared to make a conscious choice not to bring such an as-applied equal protection challenge there.

We further recognize that application of the forfeiture rule is discretionary (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7) and an exception to the rule exists where the claimed error is "capable of correction without reference to the particular sentencing record developed in the trial court," and is a pure question of law "easily remediable on appeal by modification of the condition" (*id.* at pp. 887, 888). Nowden's equal protection claim falls outside this exception, as it is an as-applied context-driven claim rather than one raising purely a question of law and is not "capable of correction without reference to the particular sentencing record developed in the trial court[.]" (*Id.* at p. 887.) The principle of judicial restraint also counsels against entertaining Nowden's constitutional attack at this juncture. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230–231, quoting *Lyng* v. *Northwest Indian Cemetery Protective Ass'n* (1988) 485 U.S. 439, 445 [" 'A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.' "].)

Nothing in our decision precludes Nowden from filing in the trial court a motion for a youth offender parole hearing under section 3051 and/or a motion for a proceeding pursuant to *People v. Franklin* (2016) 63 Cal.4th 261.

                                                                DO, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.